# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | EDCV 25-1091-GW-DTBx | Date | January 30, 2026 |
|---|---|---|---|
| Title | *Amir Aghdaei v. Envista Holdings Corporation* | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:   Attorneys Present for Defendants:

None Present   None Present

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFF'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM PURSUANT TO FED. R. CIV. 12(B)(6) [47]

Attached hereto is the Court's Tentative Ruling on Plaintiff's Motion [47] set for hearing on February 2, 2026, 2025 at 8:30 a.m.

:

Initials of Preparer   JG

<u>*Amir Aghdaei v. Envista Holdings Corporation*</u>; Case No. 5:25-cv-01091-GW-(DTBx)
Tentative Ruling on Motion to Dismiss the First Amended Counterclaim

Before the Court is Plaintiff's Motion to Dismiss the First Amended Counterclaim ("FACC") (the "Motion"). *See* Motion, Docket No. 47. The Court has considered the Motion, Defendant's opposition ("Opp.," Docket No. 48), and Plaintiff's reply ("Reply," Docket No. 49). For the reasons stated herein, the Court would **GRANT** the Motion without leave to amend insofar as it seeks to dismiss the FACC and **DENY** the Motion without prejudice insofar as it requests attorney's fees under Cal. Civ. Code § 1717.

I.   **Background**

On May 5, 2025, Amir Aghdaei ("Plaintiff") brought a suit against Envista Holdings Corporation ("Defendant"). *See generally* Docket No. 1. Plaintiff sought compensatory damages, statutory penalties, and attorneys' fees and costs, based on four causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) nonpayment of wages under California Labor Code § 206(a); and (4) waiting time penalty for failure to pay final wages under California Labor Code §§ 201, 202, 203, and 218. *See generally id.* On June 27, 2025, Plaintiff filed a First Amended Complaint ("FAC"), *see* FAC, Docket No. 16, which brought the same four causes of action. On July 11, 2025, Defendant filed a motion to dismiss from the FAC the second, third, and fourth causes of action. *See* Docket No. 18. On August 22, 2025, following full briefing and oral argument, the Court granted the motion with leave to amend as to the second cause of action and denied the motion as to the third and fourth causes of action. *See* Docket No. 28.

On September 3, 2025, Plaintiff filed a Second Amended Complaint ("SAC"), which brought the same four causes of action and appeared to retain most of the factual allegations from the FAC. *See* SAC, Docket No. 29. On September 17, 2025, Defendant filed a motion to dismiss from the SAC the second, third, and fourth causes of action and to strike Plaintiff's request for punitive damages. *See* Docket No. 30. On November 3, 2025, the Court granted the motion without leave to amend as to the third and fourth causes of action and denied the motion as to the second cause of action and punitive damages. *See* Docket No. 37.

On November 24, 2025, Defendant filed its Answer, including a counterclaim for breach of contract against Plaintiff. *See* Docket No. 39. On December 11, 2025, Defendant filed its First Amended Counterclaim ("FACC"). *See* FACC, Docket No. 46. The Court's review of the FACC

1

reveals the following allegations.[1]

Defendant is a global dental-technology company that operates in over one hundred and twenty countries. *Id.* ¶ 7. From 2019 until the transition of leadership in or around May 1, 2024 (the "Transition Date"), Plaintiff served as Defendant's President and CEO. *Id.* ¶ 8. It is alleged that "[i]n this role, he was entrusted with, and had direct access to, [Defendant's] most sensitive confidential and proprietary information and trade secrets." *Id.* Plaintiff "worked with confidential customer, vendor, product, and strategic information, was privy to high-level board and leadership deliberations, and helped shape competitive strategy, product prioritization, and market plans across [Defendant's] portfolio." *Id.* ¶ 9. On or about February 22, 2024, Plaintiff and Defendant entered into an agreement (the "Transition Agreement") pursuant to which Plaintiff agreed to continue serving as CEO through the Transition Date and thereafter provide consulting services for a defined period of eighteen months. *Id.* ¶ 10.

Section 7 of the Transition Agreement provides the following:

> **Restrictive Covenants.** You acknowledge and agree that, as a material inducement for the Company to enter into this Agreement, you expressly reaffirm, acknowledge and agree to continue to abide by the restrictive covenants set forth in that certain Agreement Regarding Competition and Protection of Proprietary Interests [(the "Restrictive Covenant Agreement")] entered into by and between you and the Company, dated as of July 29, 2019 and any other restrictive covenants to which you are subject to or otherwise bound (collectively, the "Restrictive Covenants"), the provisions of which are hereby fully incorporated herein by reference. You acknowledge that the Restrictive Covenants will remain in full force and effect following the termination of your employment or service with the Company Group and will not be superseded by the terms of this Agreement.[2]

Ex. A, Docket No. 46-1, at § 7. Defendant alleges that the Restrictive Covenant Agreement contains, *inter alia*, a post-employment covenant not to compete (the "Non-Competition Provision"), a non-solicitation covenant (the "Non-Solicitation Provisions"), and a confidential information provision (the "Confidential Information Provision"). FACC ¶ 13. The agreement also contains a provision requiring the employee, for twenty-four months after employment, to provide any prospective employee a copy of the Restrictive Covenant Agreement and to notify

---

[1] The well-pled facts therein are accepted as true for the purpose of this ruling. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

[2] The Court adopts the capitalization and corresponding definitions of terms within the Transition Agreement and the Restrictive Covenant Agreement as applicable.

2

Defendant within three calendar days of accepting new employment, including the employer's name, address, telephone number, and job title/duties (the "Subsequent Employment Protocol Provision"). *Id.* ¶ 18.

It is alleged that Plaintiff breached the Transition Agreement by failing to abide by his obligations under the Restrictive Covenant Agreement through his acceptance of positions at Premier Dental and ZimVie – two companies that directly "compete [with Defendant] in, among other areas, dental consumable, dental implants, and related products." *Id.* ¶¶ 21-30, 37-38. Specifically, it is alleged that Plaintiff's "roles with Premier Dental as Chairman of the Board of Directors and ZimVie as Chairman of the Board of Directors . . . create a situation in which, by virtue of his knowledge, experience, and the similarity of his new responsibilities, it is inevitable that he will use, rely on, disclose, and/or consider [Defendant's] confidential information and trade secrets, even if such use is unintentional or indirect, in breach of the Transition Agreement." *Id.* ¶ 46. As a result of this breach, it is alleged that Defendant suffered damages. *Id.* ¶ 47.

On December 26, 2025, Plaintiff filed the instant Motion. *See* Motion.

## II. Legal Standard

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under Rule 12(b)(6), the court must: (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell*, 266 F.3d at 988; *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). In its consideration of the motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable, and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th

3

Cir. 2001). Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Twombly*, 550 U.S. at 561-63 (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).

### B. Rule 15(a)

Under Federal Rule of Civil Procedure 15(a)(2), federal courts are instructed to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). A district court, however, may in its discretion deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III. Discussion

Plaintiff asserts that the FACC should be dismissed without leave to amend and that he is entitled to an award of attorney's fees under Cal. Civ. Code § 1717 primarily because the restrictive covenants Defendant seeks to enforce are unenforceable under California law. *See* Motion at 7 (citing Cal. Bus. & Prof. Code § 16600). Defendant contends in opposition that Delaware law, rather than California law, applies because of the choice-of-law provision contained within the Transition Agreement. *See* Opp. at 8. As such, Defendant contends that Plaintiff has failed to meet his burden of showing that the FACC does not plead the plausibility of an enforceable restrictive covenant under Delaware law. *See id.* The Court begins with the enforceability of the Restrictive Covenants that Defendant alleges were breached.

### A. Enforceability of the Restrictive Covenants

#### 1. Applicable Law

This dispute is predicated upon the parties' Transition Agreement and Restrictive Covenant Agreement, both of which purport to "be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to the conflicts of laws principles thereof." *See* FACC ¶¶ 12, 19; Ex. A, Docket No. 46-1, at § 11(g); Ex. B, Docket No. 46-3, at § 17. Notwithstanding this choice-of-law provision, Plaintiff asserts that California law applies because

4

"California's interest in protecting workers such as [Plaintiff] is far greater than the tenuous interests of any other state." *See* Motion at 7. Defendant contends in opposition that Delaware law applies because Defendant "is a Delaware corporation and the parties specifically chose Delaware law to apply." *See* Opp. at 8.

"[W]hen confronted with a choice-of-law question, a federal district court sitting in diversity must use the choice-of-law rules of its forum state to determine which state's substantive law to apply." *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1035 (N.D. Cal. 2012). "If the parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) (internal quotation marks omitted). "Only in limited circumstances will a court decline to enforce such clauses; *e.g.*, where (1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would run contrary to a California public policy or evade a California statute." *Certain Underwriters at Lloyd's v. Expeditors Int'l of Washington, Inc.*, 584 F. Supp. 3d 860, 868 (C.D. Cal. 2022). If the chosen state's law "conflicts with a fundamental California policy then we evaluate whether California has a materially greater interest than the chosen state in resolution of the issue." *ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1066 (9th Cir. 2005). "In determining which state has a materially greater interest, California courts consider which state, in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1324 (9th Cir. 2012) (internal quotation marks omitted).

Because Defendant is incorporated in Delaware, the Court would find that there is a substantial relationship to Delaware such that the Delaware choice-of-law provision presumptively applies. *See Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995) (holding that a party's incorporation in New York was sufficient to establish a substantial relationship).

The next question is whether the application of Delaware law would be contrary to a fundamental California public policy. There are no "bright-line rules" governing whether a law constitutes a state's fundamental public policy, but "[i]t is clear . . . that the policy must be a 'substantial' one." *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 866 (N.D. Cal. 2019). The party seeking the application of a law different from an otherwise enforceable choice-of-law provision "must point to a statute or judicial decision that clearly states such a strong public

5

policy." *Id.* (quoting *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1090 (9th Cir. 2018).

Under Delaware law, "a covenant not to compete must: (1) be reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities in order to be enforceable." *See, e.g.*, *Lyons Ins. Agency, Inc. v. Wilson*, No. CV-2017-0092, 2018 WL 4677606, at *5 (Del. Ch. Sept. 28, 2018). Covenants not to compete with reasonable time and geographical restrictions are enforceable, though not "mechanically." *See McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 3-4 (Del. Ch. 1987) ("[C]ovenants restricting future employment, in order to be valid . . . must be determined . . . to be reasonably limited geographically and with respect to the restriction on time," and must "foster a legitimate economic interest of the plaintiff." (citation omitted)).

Plaintiff identifies Cal. Bus. & Prof. Code § 16600 as an expression of California's strong public policy against any interference with an individual's right to engage in employment and businesses of his or her choosing. *See* Motion at 17 (citing *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1042 (N.D. Cal. 1990); *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 900 (1998); *Cont'l Car-Na-Var Corp. v. Moseley*, 24 Cal. 2d 104, 110 (1944); and *Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622, 633 (Cal. Ct. App. 1989)). Indeed, California law generally prohibits contractual provisions "by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." Cal. Bus. & Prof. Code § 16600. California maintains a "settled legislative policy in favor of open competition and employee mobility." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008) (citations omitted); *see also Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 706 (2002) ("California has a strong interest in protecting its employees from noncompetition agreements under section 16600."); *Hill Med. Corp. v. Wycoff*, 86 Cal. App. 4th 895, 900 (2001) ("California has settled public policy in favor of open competition." (citations omitted)); *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 859 (1994) ("California courts have consistently declared [§ 16600] an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice."). Under this policy, non-compete and non-solicitation clauses, regardless of how narrowly drawn, are void unless they fall within a statutory exception. *Edwards*, 44 Cal. 4th at 949.

The Court recognizes that "there has been a long developing trend among California courts

6

of finding that § 16600 represents a fundamental public policy interest in California that overrides contractual choice of law provisions, at least with respect to such restrictive covenants." *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, No. 1:17-cv-01207-DAD-(BAM), 2019 WL 1400093, at *6 (E.D. Cal. Mar. 28, 2019) (collecting cases).  Finding no reason to deviate from this trend, the Court would find that application of Delaware law as called for in the Transition Agreement to the Restrictive Covenants would be contrary to a fundamental policy of California.

Defendant suggests that there exists no conflict between Delaware law and California law because both states "allow companies to restrict consultants from competing or soliciting during the consultancy period." *See* Opp. at 10.  This argument appears to stem from Defendant's position that Plaintiff "breached his obligations under the Transition Agreement by working for Premier Dental and/or ZimVie and soliciting [Defendant's] employees to join these competitors *while* [*he*] *was concurrently serving as a consultant to* [*Defendant*]." *See id.* at 7-8 (emphasis in original).  In suggesting that § 16600 does not apply to restrictive covenants that last only for the term of employment, Defendant relies on cases such as *Techno Lite, Inc. v. Emcod, LLC*, 44 Cal. App. 5th 462 (2020), and *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495 (2013).  *See* Opp. at 10-11.  Although California courts have read § 16600 not to bar in-term restraints in a contract between employer and employee, *see, e.g., Techno Lite*, 44 Cal. App. 5th at 471; *Angelica Textile Servs.*, 220 Cal. App. 4th at 509, the Court finds that these cases are inapposite because Plaintiff was no longer an employee when Defendant alleges the breach occurred.[3]  *See* Ex. A, Docket No. 46-1, at § 4(a) ("During the Consulting Period, you agree to provide consultation services to the Company *in the capacity of an independent contractor* . . . ." (emphasis added)); *id.* at § 6 ("You acknowledge and agree that, in your capacity as a consultant of the Company during the Consulting Period, *your status at all times will be that of an independent contractor*." (emphasis added)); FACC ¶¶ 21, 26 (alleging that "*during the Consulting Period* (as defined in the Transition Agreement) . . . , [Plaintiff] accepted the position[s] of Chairman of the Board of Directors of Premier Dental" and "Chairman of the Board of Directors of ZimVie" (emphasis added)).

---

[3] The Court would add that *Techno Lite* is distinguishable because it involved allegations of fraud based on a promise not to compete with the defendant's employer while defendant was still employed with the employer.  *See Techno Lite*, 44 Cal. App. 5th at 474.  The court in *Techno Lite* did not consider the impact of an agreement not to compete during employment and for a period following the termination of the agreement.

7

"Outside [of the employer-employee] context, state and federal courts applying California law typically hold that § 16600 *does bar* in-term agreements not to compete." *FaZe Clan Inc. v. Tenney*, 467 F. Supp. 3d 180, 188 (S.D.N.Y. 2020) (emphasis added) (citing *Kelton v. Stravinski*, 138 Cal. App. 4th 941 (2006), which found unenforceable a non-compete provision in a contract between business partners). "Indeed, in a recent non-precedential decision, a panel of the Ninth Circuit relied on *Kelton* to hold that § 16600 barred an in-term non-compete provision in a contract between two independent contractors, a filmmaker and an actor." *Id.* (citing *ITN Flix, LLC v. Hinojosa*, 686 F. App'x 441 (9th Cir. 2017)). These decisions are consistent with *Techno Lite*, which explained that "[d]uring the term of employment, an employer is entitled to its employees' 'undivided loyalty.'" *See Techno Lite*, 44 Cal. App. 5th at 471 (citations omitted). Here, there was no employer-employee relationship between the parties during the period in which Plaintiff provided Defendant with consulting services.[4] As such, § 16600 still applies.

The last question is "whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'" *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 466 (1992) (quoting Rest., § 187, subd. (2)). If so, "the choice of law shall not be enforced, for the obvious reason that in such circumstance [courts] will decline to enforce a law contrary to this state's fundamental policy." *Id.* It does not appear that Delaware has any connection to this action aside from being the state where Defendant is incorporated. Plaintiff is not a citizen of Delaware. While Defendant alleges nine times in the FACC that Plaintiff "was a citizen and resident of the State of Oregon," *see, e.g.*, FACC ¶ 4, there is no allegation by Defendant with

---

[4] Defendant's reliance on *Parallel Synthesis Techs., Inc. v. DeRisi*, No. 5:13-cv–05968-PSG, 2014 WL 4748611 (N.D. Cal. Sept. 23, 2014), to suggest that there was some sort of employer-employee relationship between the parties despite the fact that the Transition Agreement plainly indicates otherwise is unavailing. *See* Opp. at 11-12. In *Parallel Synthesis Techs.*, "[w]hile [the defendant's] consulting relationship with [the plaintiff] may have been described as an independent contractor agreement, as alleged the characteristics of [the defendant's] position did not change from those of his position as an employee." *Parallel Synthesis Techs.*, 2014 WL 4748611, at *4. Defendant identifies no allegations that suggest the characteristics of Plaintiff's role as a consultant did not change from those of his position as Defendant's CEO. Indeed, the Court finds no allegations in this case that come close to suggesting that Plaintiff "was an agent that owed a fiduciary duty of loyalty to [Defendant]." *See id.* Furthermore, the Court would strongly advise against making any argument that suggests Plaintiff was an employee during the time he provided consulting services to Defendant because Defendant has previously argued the exact opposite. *See* Docket No. 30, at 11-13.

To the extent there is some dispute about whether Plaintiff was an employee or an independent contractor during the consulting period, the Court still sees no reason why *Edwards*' interpretation of § 16600 would apply differently to employees versus independent contractors. *See Guardian Life Ins. Co. of Am. Inc. v. Andraos*, No. 2:07-cv-05732-SJO-(FMOx), 2009 WL 10675264, at *3 (C.D. Cal. Mar. 26, 2009). Section 16600 provides that "every contract by which *anyone* is restrained from engaging in a lawful profession, trade or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600(a) (emphasis added).

8

respect to where Plaintiff performed work while employed by Defendant.[5]  By contrast, California's interests appear materially greater than that of Delaware's in the context of this case because Defendant has its principal place of business in California.  The California Court of Appeal has indicated that "California has a strong interest in protecting the freedom of movement of persons whom California-based employers . . . wish to employ to provide services in California, regardless of the person's state of residence or precise degree of involvement in California projects." *Application Grp.*, 61 Cal. App. 4th at 900-01.  In other words, California has a materially greater interest in ensuring that any employee of a California-based employer is not unlawfully restricted from freely pursuing his or her profession.  *See id.* at 900 ("The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (1968))); *see also id.* at 901 (noting that § 16600 represents "a statement of California public policy which ensures that California employers will be able to compete effectively for the most talented, skilled employees in their industries, wherever they may reside.").[6]

The Court would conclude, therefore, that California's interests are materially greater than those of Delaware and that California would be more seriously impaired if its laws were not applied.  As such, the Court will disregard the Delaware choice-of-law provision in analyzing the enforceability of the restrictive covenants at issue in this case and will instead apply California law.

    2. <u>Application of Cal. Bus. & Prof. Code § 16600</u>[7]

---

[5] Plaintiff appears to suggest that he performed work in California while employed by Defendant.  *See* Motion at 14.

[6] Plaintiff also indicates that "the Transition Agreement assumes the protections of California law, acknowledging [Plaintiff] 'will continue to be eligible for annual vacation and paid time off benefits pursuant to the Company's applicable policies *and California law* . . . .'"  *Id.* (emphasis and ellipsis in original) (quoting Ex. A, Docket No. 46-1, at § 1(a)(i)).  The agreement also contains a waiver under Cal. Civ. Code § 1542, which Plaintiff claims would be unnecessary if Plaintiff were not subject to California's employment laws.  *See id.*

[7] Defendant fails to respond to Plaintiff's arguments with respect to the applicability of § 16600, arguing instead that the restrictive covenants at issue here are enforceable under Delaware law.  *See* Opp. at 19-26.  "The failure to substantively oppose a motion to dismiss can be 'construed as a waiver or abandonment of those issues warranting dismissal of [those] claims.'"  *Salcedo v. Nissan N. Am., Inc.*, No. 2:22-cv-04152-MRW, 2023 WL 332761, at *8 (C.D. Cal. Jan. 18, 2023) (alteration in original) (quoting *Shorter v. Los Angeles Unified Sch. Dist.*, No. 2:13-cv-03198-ABC-(AJWx), 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013)) (citing *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) and *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174,

9

Whether Defendant has stated a claim for breach of contract involves the application of § 16600 to the Restrictive Covenants. As already described above, California law generally prohibits contractual provisions "by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." Cal. Bus. & Prof. Code § 16600 "This prohibition extends to any 'restraint of a substantial character,' no matter its form or scope." *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1092 (9th Cir. 2015) (quoting *Chamberlain v. Augustine*, 172 Cal. 285, 288 (1916)). There are three statutory exceptions to Section 16600, none of which apply in this case.[8] *See* Cal. Bus. & Prof. Code §§ 16601, 16602, 1660.5 (creating statutory exceptions for the sale or dissolution of a partnership, limited liability company, or the sale of a business's goodwill). California courts have read § 16600 broadly. *Golden v. Cal. Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1022 (9th Cir. 2018) (reviewing California court cases). Cal. Bus. & Prof. Code § 16600.5 states that a "former employer shall not attempt to enforce" a non-compete contract that is void and provides remedies of injunctive relief and actual damages for contracts with voidable non-compete provisions. *See* Cal. Bus. & Prof. Code § 16600.5.

    a.  *Non-Competition Provision*

Plaintiff asserts that the Non-Competition Provision contained in the Restrictive Covenant Agreement "is, on its face, void" under § 16600. *See* Motion at 12 (citations omitted). Plaintiff indicates that the provision restrains him from "engag[ing] in any other employment, occupation, consulting, or other business activity" for a full year after the termination of his employment with Defendant. *See id.* While the Court would disagree with Plaintiff's reading of the agreement, it would nonetheless agree that the provision is clearly unenforceable under California law. The Non-Competition Provision indicates as follows:

> **Non-Competition.** During my employment I will not engage in any other employment, occupation, consulting or other business activity that competes with or conflicts with my obligations to the Company. Without limiting the foregoing, for 12 months after my employment termination, I will not directly or indirectly,

---

178 (D.D.C. 2002)).

[8] In addition, California courts have recognized a trade secret exception to § 16600. *See Muggill v. Reuben H. Donnelley Corp.*, 62 Cal. 2d 239, 242 (1965) (finding § 16600 permits non-compete provisions in employment contracts when "necessary to protect the employer's trade secrets"). Following the California Supreme Court's decision in *Edwards*, however, some California courts have expressed doubt that such a common law exception still exists. *See, e.g.*, *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 577 (2009). Defendant makes no argument that the trade secret exception is applicable here.

> on behalf of myself or in conjunction with any other person or entity:
>
> (l) own any business (other than less than 3% ownership in a publicly traded company) that sells Competing Products in the Restricted Territory; or
>
> (2) work in the Restricted Territory for any person or entity that sells Competing Products in any role: (i) that involves responsibilities related to the sale of Competing Products; or (ii) developing or implementing strategies to compete with the Company with respect to Competing Products; or (iii) directly or indirectly supervising or managing employees or other personnel who compete with the Company with respect to Competing Products; or (iv) utilizing or disclosing Confidential Information.

Ex. B, Docket No. 46-3, at § 2(b). The Court reads the language Plaintiff identifies from the first sentence of this provision as applying only "[d]uring [his] employment." *See id.* The restrictions that apply to the year following the termination of his employment are actually described in the second sentence. While the Court observes that the restrictions post-employment may be arguably narrower than those during employment, the Court would still find them to be clearly within the scope of § 16600. California courts have consistently "condem[ed] noncompetition agreements." *Edwards*, 44 Cal. 4th at 946 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 123 n.12 (2000)). In *Edwards*, the California Supreme Court clarified that "Section 16600 is unambiguous, and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect." *Id.* at 950.

      b. *Non-Solicitation Provisions*

Plaintiff asserts that the Non-Solicitation Provisions contained in the Restrictive Covenant Agreement are similarly improper restraints. *See* Motion at 12. The Non-Solicitation Provisions indicate as follows:

> **Non-Solicitation of Customers.** During my employment and for 12 months after my employment termination, I will not directly or indirectly, on behalf of myself or in conjunction with any other person or entity, solicit or accept business from any Restricted Customer if the products or services that customer intends to purchase are Competing Products.
>
> **Non-Solicitation of Employees.** During my employment and for 24 months after my employment termination, I will not directly or indirectly, on behalf of myself or in conjunction with any other person or entity, hire, solicit, recruit, induce, or attempt to hire, solicit, recruit, or induce any employee or independent contractor of the Company, who worked for the Company during the 6 months preceding my employment termination, to work for me or my new employer.

Ex. B, Docket No. 46-3, at § 2(c)-(d).

In *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923 (2018), the

11

California Court of Appeal considered a "broadly worded provision [that] prevent[ed] individual defendants, for a period of at least one year after termination of employment with AMN, from either 'directly or indirectly' soliciting or recruiting, or causing others to solicit or induce, any employee of AMN." *See id.* at 936. Similarly, the Non-Solicitation Provisions relating to employees proscribes solicitation both "[d]uring [Plaintiff's] employment and for 24 months after [his] employment termination." *See* Ex. B, Docket No. 46-3, at § 2(d). Even with the included prohibition on soliciting during the employee's employment, the court in *AMN* "conclude[d] that the nonsolicitation of employee provision in the [agreement wa]s void under section 16600." *AMN Healthcare*, 28 Cal. App. 5th at 936. The Non-Solicitation Provisions relating to customers also "goes well beyond prohibiting active solicitation by prohibiting departing employees from selling or rendering any services to [Defendant's] customers [and prospective customers] or directly or indirectly assisting others to do so – even if it is the customer who solicits the former employee." *Dowell*, 179 Cal. App. 4th at 578-79 (citing *Morris v. Harris*, 127 Cal. App. 2d 476, 478 (1954)); *see* Ex. B, Docket No. 46-3, at § 2(a)(3) (defining "Restricted Customer" as "a customer or prospective customer of the Company"). The Non-Solicitation provisions are, therefore, not exempt from section 16600. *See World Fin. Grp. Ins. Agency v. Olson*, No. 5:24-cv-00480-EJD, 2024 WL 3498490, at *4-6 (N.D. Cal. July 19, 2024).

        c. *Confidential Information Provision*

Although Plaintiff does not assert that the Confidential Information Provision is unenforceable under § 16600, Plaintiff avers that this provision "do[es] not change this analysis" because Defendant's "theory is *not* that [Plaintiff] has disclosed confidential information – rather, it predicts that [Plaintiff] will at some point in the future inevitably make such a disclosure." *See* Motion at 13 (emphasis in original) (citing FACC ¶¶ 29-30, 46). Plaintiff argues that such a theory known as the "inevitable disclosure doctrine" is invalid under California law. *See id.* (citations omitted). Defendant makes no attempt to respond to this argument.

The Confidential Information Provision indicates as follows:

> **Nondisclosure and Prohibition against Misuse.** During my employment, I will not use or disclose any Confidential Information, without the Company's prior written permission, for any purpose other than performance of my duties for the Company or as set forth in Section 4 below.

Ex. B, Docket No. 46-3, at § 1(b). "Confidential Information" is defined in part as "any information about the Company's business or employees that is not generally known to the

12

public."[9] *Id.* at § 1(a).

"The inevitable disclosure doctrine, as first articulated in *PepsiCo, Inc. v. Redmond*, holds that 'a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets.'" *Globespan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1235 (C.D. Cal. 2001) (quoting *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995)). "The Central District of California has considered and rejected the inevitable disclosure doctrine." *Id.* (citing *Danjaq LLC v. Sony Corp.*, No. 2:97-cv-08414-ER-(Mcx), 1999 WL 317629, at *1 n.1 (C.D. Cal. Mar. 11, 1999); *Comput. Scis. Corp. v. Comput. Assocs. Int'l, Inc.*, No. 2:98-cv-01374-WMB-(SHx), 1999 WL 675446 (C.D. Cal. Aug. 12, 1999); *Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999)).

Defendant alleges that Plaintiff "will inevitably use, disclose, rely on, and/or consider [Defendant's] Confidential Information and trade secrets to gain competitive advantage in the performance of these functions." FACC ¶ 29. Defendant further alleges that Plaintiff's "roles with Premier Dental as Chairman of the Board of Directors and ZimVie as Chairman of the Board of Directors – both direct competitors of Defendant – create a situation in which, by virtue of his knowledge, experience, and the similarity of his new responsibilities, it is inevitable that he will use, rely on, disclose, and/or consider [Defendant's] confidential information and trade secrets, even if such use is unintentional or indirect, in breach of the Transition Agreement." *Id.* ¶ 46. The Court finds that Defendant's allegations are vague and conclusory, devoid of any facts showing how Plaintiff breached the Confidential Information provision. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 990 (S.D. Cal. 2012) (dismissing breach of contract claim predicated on confidentiality provision because party failed to plead "what the 'trade secrets and/or confidential information' are or whether the confidential information falls within the terms of the agreements"); *Pray, Inc. v. Christian Care Ministry, Inc.*, No. 2:23-CV-10660-SB-(JCx), 2024

---

[9] The Court notes that the definition of "Confidential Information" in the Restrictive Covenant Agreement is very broadly written. In *Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App. 5th 303 (2020), a California Court of Appeal considered a similar definition in an employment agreement containing various anticompetitive provisions. *See id.* at 316. "Confidential Information" was defined in the agreement at issue in *Brown* as "information, in whatever form, used or usable in, or originated, developed or acquired for use in, or about or relating to, the Business." *Id.* The court concluded that this definition was "strikingly broad" and that the confidentiality provisions "patently violate[d] section 16600" by collectively "operat[ing] as a de facto noncompete provision." *Id.* at 316-19. Although Plaintiff did not make any express argument about the enforceability of the Confidential Information Provision, the Court would add here that it does not believe this provision would withstand scrutiny under *Brown* and § 16600.

13

WL 1680053, at *7 (C.D. Cal. Apr. 5, 2024) (statement of a breach of contract claim "requires more" than a "conclusory" allegation that confidentiality provision was breached). Defendant appears to be suggesting through its allegations that Plaintiff's mere knowledge of Defendant's confidential information while working for another company constitutes misappropriation of the information and disclosure to the new company. As already indicated, however, California rejects this type of theory.

### d. Subsequent Employment Protocol Provision

Plaintiff similarly asserts that the Subsequent Employment Protocol Provision "does not change this analysis" because "[t]his provision is, in effect, a doubling of the one-year non-compete clause, in that it is designed not to advance any legitimate interest, but rather provide [Defendant] with a veto over new employment." See Motion at 13. Plaintiff explains that "if the required notice would have spurred [Defendant] to take earlier action, it is a restraint on trade; but if [Defendant] would not have taken action, it is not harmed. Conversely, if the required notice would dissuade a new employer from associating with [Plaintiff] out of concern for [Defendant's] litigious nature, it is a restraint on [Plaintiff] in violation of Section 16600 et seq. If it is not likely to spur such concern, then – again – [Defendant] is not harmed." Id. Defendant contends without any explanation that this "provision does not give [Defendant] 'veto' power." See Opp. at 23 n.12 (citing Ex. B, Docket No. 46-3).

The Subsequent Employment Protocol Provision indicates as follows:

> **Subsequent Employment Protocol.** During my employment and for 24 months after termination of my employment, prior to accepting employment with any person or entity, I will provide my prospective employer with a copy of this Agreement, and I consent to the Company's right, at any time, to notify such employer of this Agreement, as well as the details of any alleged violations thereof. Additionally, within three calendar days after accepting any employment with another employer, I will notify the Company of such subsequent employer's name, address and telephone number, and the title and description of the job duties for which I have accepted employment.

Ex. B, Docket No. 46-3, at § 6. Defendant alleges upon information and belief that Plaintiff "failed to comply with the Subsequent Employment Protocol in connection with his service at Premier Dental and/or ZimVie." See FACC ¶ 41.

The Court is inclined to find that the Subsequent Employment Protocol is void under § 16600 because it unfairly limits his mobility in the same way that a "no-hire" agreement would. With a "no-hire" agreement, "the employer, instead of attempting to bind an employee with a

14

covenant not to compete, attempts to obligate customers not to hire its employees." *See Thomas Weisel Partners LLC v. BNP Paribas*, No. 3:07-cv-06198-MHP, 2010 WL 546497, at *4 (N.D. Cal. Feb. 10, 2010). "California law equates this type of 'no-hire' provision with a covenant not to compete because, like a covenant not to compete, such a provision restricts the ability of the employees in question to engage in their profession." *Id.* (citing *VL Sys., Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708, 716-17 (2007)). In a similar fashion, the Subsequent Employment Protocol Provision attempts to effectively obligate Plaintiff's "subsequent employer[s]" not to hire Plaintiff. As such, this provision operates to accomplish indirectly what it cannot accomplish directly.[10] The Subsequent Employment Protocol Provision is also effective for two years after the termination of Plaintiff's employment, which strongly suggests that it runs afoul of § 16600. *See Samuelian v. Life Generations Healthcare, LLC*, 104 Cal. App. 5th 331, 355 (2024) ("[R]estraints following an employee's termination . . . unquestionably interfere with a person's right to engage in an occupation or business of their choosing.").

In sum, the Court would find that the Non-Competition provision, the Non-Solicitation Provisions, and the Subsequent Employment Protocol Provision are subject to *Edwards* and void under § 16600 and that Defendant fails to plausibly allege that Plaintiff breached the Confidential Information Provision. As such, these provisions cannot be the basis for a cognizable breach of contract claim. Accordingly, the Court would **GRANT** the Motion to the extent it arises from the breach of these provisions. Because all four provisions appear to be void under California law, the Court sees no reason to grant Defendant leave to amend.

**B. Attorney's Fees**

Plaintiff lastly asserts that he is entitled to attorney's fees because the Restrictive Covenant Agreement includes a non-reciprocal attorney's fees provision, which is not only prohibited but also converted into a bilateral agreement under Cal. Civ. Code § 1717. *See* Motion at 20-22. Defendant contends in opposition that Plaintiff's challenge to Defendant's prayer for relief is procedurally improper at this stage and notwithstanding this, Delaware law applies and permits non-reciprocal attorney's fees provisions. *See* Opp. at 26-28. Plaintiff makes no argument in

---

[10] Plaintiff may even have a viable claim for wrongful termination in violation of public policy under *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167 (1980), if he were terminated by a subsequent employer because he signed a non-compete with Defendant. *See Silguero v. Creteguard, Inc.*, 187 Cal. App. 4th 60, 70 (2010) (indicating that a subsequent employer's "understanding" and enforcement of another company's non-compete agreement was "tantamount to a no-hire agreement" between companies).

response.

> The relevant section of the Restrictive Covenant Agreement indicates as follows:
>
>> **Injunctive Relief and Attorney's Fees.** I agree that in the event I breach this Agreement, the Company will be irreparably harmed and entitled to an injunction restraining any further breach, in addition to any other rights to which it is entitled. *Further, I will be responsible for all reasonable attorneys' fees, costs and expenses incurred by the Company if it successfully enforces any portion of this Agreement against me.* Additionally, any time periods for restrictions set forth in Section 2 above will be extended by an amount of time equal to the duration of any time period during which I am in violation of this Agreement.

Ex. B, Docket No. 46-3, at § 9 (emphasis added).

While the parties have far from sufficiently briefed this issue, the Court would find that California law likely applies to the attorney's fee dispute. The Court has already indicated that Delaware has a substantial relationship to the parties in the transaction. *See* Section III.A.1, *supra*. The Ninth Circuit has indicated that "California has a fundamental policy disfavoring non-reciprocal attorney's fees clauses in litigation in its state courts." *See First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1156 (9th Cir. 2015). As Plaintiff rightly points out, the use of non-reciprocal attorney's fees are prohibited under Cal. Civ. Code § 1717, which provides that:

> [i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a). Defendant indicates that "Delaware law likely contradicts California" because it "specifically allows unilateral attorneys' fees provisions that are included in non-competition agreements." Opp. at 27 (citing *Weichert Co. of Pa. v. Young*, No. 2223-VCL, 2007 WL 4372823, at *6-7 (Del. Ch. Dec. 7, 2007) and *All Pro Maids, Inc. v. Layton*, No. Civ.A. 058-N, 2004 WL 3029869, at *6-7 (Del. Ch. Dec. 20, 2004), *aff'd*, 880 A.2d 1047 (Del. 2005)). If that is the case, then the application of Delaware law would be contrary to a fundamental California public policy. California also has a materially greater interest in the attorney's fees dispute than does Delaware for largely the same reasons discussed in Section III.A.1, *supra*. The Court would add that Plaintiff chose to bring his lawsuit in a federal district court in California, and "California has a materially greater interest in enforcing the equitable rules governing access to its courts – including the reciprocal attorney fees rule – than [Delaware] has in assuring the enforcement of

16

[Delaware] law concerning attorney fees, when those attorney fees are not incurred as a result of any use of [Delaware] courts, and have no effect on the accessibility to [Delaware] courts." *See ABF Cap. Corp. v. Grove Props. Co.*, 126 Cal. App. 4th 204, 220 (2005). Accordingly, the Court will disregard the Delaware choice-of-law provision in analyzing Plaintiff's request for attorney's fees.

Under California law, each party bears its own fees unless otherwise provided by contract or statute. Cal. Code Civ. Proc. § 1021; *Trope v. Katz*, 11 Cal. 4th 274, 278 (1995). If the parties' contract "specifically provides" for attorney's fees "incurred to enforce that contract," the prevailing party will recover fees, "whether he or she is the party specified in the contract or not." Cal. Civ. Code § 1717(a). "Section 1717's 'effect is to make an otherwise unilateral right to attorney fees reciprocally binding upon all parties to actions to enforce the contract.'" *First Intercontinental Bank*, 798 F.3d at 1157 (quoting *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338, 1342 (1992)). Section 1717 applies when three conditions are met: (1) "the action in which the fees are incurred must be an action 'on a contract,' a phrase that is liberally construed;" (2) "the contract must contain a provision stating that attorney's fees incurred to enforce the contract shall be awarded either to one of the parties or to the prevailing party;" and (3) "the party seeking fees must be the party who 'prevail[ed] on the contract,' meaning . . . 'the party who recovered a greater relief in the action on the contract.'" *In re Penrod*, 802 F.3d 1084, 1087-88 (9th Cir. 2015) (citing Cal. Civ. Code § 1717(b)(1)); *see also Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 357 (2008) (emphasizing that the determination of prevailing party status was to be made without reference to the success or failure of noncontract claims).

Here, Defendant's counterclaim for breach of the Transition Agreement clearly constitutes an action "on a contract." The Restrictive Covenant Agreement contains a non-reciprocal attorney's fees provision. Plaintiff, however, is not the prevailing party in this action. Cal. Civ. Code § 1717(b)(1) defines the "prevailing party" as "the party who recovered a greater relief *in the action on the contract*." Cal. Civ. Code § 1717(b)(1) (emphasis added). Defendant's counterclaim for breach of contract is not evaluated "in isolation." *See Bon Appetit Danish, Inc. v. Delta Sys. & Automation LLC*, No. 2:23-cv-04305-HDV-(SKx), 2025 WL 2415540, at *3 n.5 (C.D. Cal. Aug. 7, 2025). The action on the contract in this case consists not just of Defendant's counterclaim for breach of contract but also Plaintiff's surviving claims for breach of contract and breach of the covenant of good faith and fair dealing. *See id.* As such, the Court cannot determine

17

at this stage who is the prevailing party for purposes of § 1717.  Accordingly, the Court would find that Plaintiff is not entitled to attorney's fees under § 1717.

## IV.     Conclusion

Based on the foregoing reasons, the Court would **GRANT** the Motion without leave to amend insofar as it seeks to dismiss the FACC and **DENY** the Motion without prejudice insofar as it requests attorney's fees under Cal. Civ. Code § 1717.